IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 06-cv-01606-DME-KLM

KENNETH M. SUTTON,

    Plaintiff(s),

v.

CORRECTIONS CORPORATION OF AMERICA,
WASHINGTON STATE DEPARTMENT OF CORRECTIONS,
WARDEN KRAUSE,
ROGERS,
HAROLD CLARK, and
JAMES THATCHER,

    Defendant(s).
_____

### RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

    This matter is before the Court on **Defendants' Motion for Summary Judgment** [Docket No. 115; filed January 22, 2008] (the "Motion"). Pursuant to 28 U.S.C. § 636(b)(1)(A) and D.C. COLO.L.Civ.R. 72.1.C., the matter has been referred to this Court for recommendation. The Court has reviewed the Motion, Plaintiff's Response [Docket No. 132; filed April 7, 2008], Defendants' Reply [Docket No. 133; filed April 15, 2008], Plaintiff's Surreply[1] [Docket No. 135; filed May 5, 2008], the entire case file, and the applicable law

---

[1]Although the filing of surreplies is not contemplated by the Federal Rules of Civil Procedure or the Court's Local Rules, out of an abundance of fairness to Plaintiff the Court has considered the arguments in his Surreply.

1

and is sufficiently advised in the premises. For the reasons set forth below, the Court respectfully **RECOMMENDS** that the Motion be **GRANTED**.

**I.    Standard of Review**

In ruling on a motion for summary judgment, the facts must be viewed in the light most favorable to the party opposing the motion, and that party must be afforded the benefit of all reasonable inferences to be drawn from the evidence. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970).  Fed. R. Civ. P. 56(c) provides that summary judgment may be granted if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of demonstrating, by reference to portions of pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, the absence of genuine issues of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).  The party opposing the motion is then required to go beyond the pleadings and designate evidence of specific facts showing that there is a genuine issue for trial. *Id.* at 324.  Only admissible evidence may be considered when ruling on a motion for summary judgment. *World of Sleep, Inc. v. La-Z-Boy Chair Co.*, 756 F.2d 1467, 1474 (10th Cir. 1985).

Finally, Plaintiff here is proceeding *pro se*. The Court must construe the motions liberally because Plaintiff is not represented by an attorney. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, the Court should not be the *pro se* litigant's advocate. *See Hall*, 935 F.2d at 1110. A court may not assume that a plaintiff can prove facts that have not been alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged. *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

## II.     Statement of the Case

As a preliminary matter, Defendants argue that because Plaintiff's Response [#132] fails to explicitly challenge Defendants' statement of undisputed facts, the Court should accept as true all material facts in the Defendants' brief. *Reply* [#133], pgs. 1-2 (citing to *Reed v. Bennett*, 312 F.3d 1190, 1195 (10th Cir. 2002)). However, *Reed* provides only that "[b]y failing to file a response within the time specified by the local rule, the nonmoving party waives the right to respond or controvert the facts asserted in the summary judgment motion." 312 F.3d at 1195. The *Reed* case dealt with the application of District of Kansas Local Rule 7.4, which provides, in relevant part, that if a party fails "to file a response within the time required . . ., the motion will be considered and decided as an uncontested motion, and ordinarily will be granted without further notice."

Defendants' argument is inapposite for two reasons: first, the District of Colorado does not have such a local rule, and second, even if it did, Plaintiff did not fail to file a response [#132]. While Plaintiff's Response perhaps does not explicitly state that he

3

challenges Defendants' statement of undisputed facts, a simple reading makes it clear that he does dispute certain material facts. As such, the Court declines to accept as true all material facts as presented in Defendants' brief.

The following facts appear to be essentially undisputed for purposes of this Motion. Plaintiff Kenneth Sutton is an inmate in the custody of the State of Washington. *Motion* [#115], p. 2. In July of 2004, pursuant to a contract with the State of Washington, Plaintiff was housed at the Crowley County Correctional Facility ("CCCF"), a privately run facility located in Olney Springs, Colorado. *Id.* CCCF is run by the Corrections Corporation of America ("CCA"), a corporation that operates prisons in the State of Colorado. *Id.* In July[2] of 2004, a riot occurred at CCCF, at which time a Special Operations Response Team ("SORT") was utilized. *Id.*; *Second Amended Complaint* [#21], p. 5. At the time of the riot, Defendant Crouse[3] was the Warden at CCCF, Defendant Rogers was the Assistant Warden at CCCF, Defendant Clark was the Secretary of the Washington State Department of Corrections ("WDOC"), and Defendant Thatcher was the WDOC Superintendent for out-

---

[2]There appears to be some confusion over the date of the riot at issue. In Plaintiff's complaint, he states that the riot occurred on December 20, 2004. *See Second Amended Complaint* [#21], p. 8. However, Defendants' Motion states that the riot occurred in July of 2004. *See Motion* [#115], p. 1. Plaintiff's Response then appears to agree that the riot actually occurred in July of 2004, and Plaintiff submitted medical records dated July 21, 2004 and July 22, 2004 as attachments to his Response. *See Response* [#132], p. 1; Ex. A; Ex. B. From these records and the parties' statements, the Court concludes that the riot at issue actually occurred on or around July 20, 2004.

[3]Plaintiff identifies him as "Warden Krause," but Defendants have identified him as L. Brent Crouse. *Motion* [#115], p. 1.

4

of-state inmates. *Motion* [#115], pgs. 2-3.

Plaintiff commenced this case on July 7, 2006 by filing a Complaint in the United States District Court for the District of Arizona [Docket No. 1-2]. Plaintiff's Complaint was transferred to this Court on August 14, 2006 [Docket No. 1]. Plaintiff filed his Second Amended Complaint on January 8, 2007 [Docket No. 21]. The Second Amended Complaint asserts three causes of action. Claim One alleges that during the riot Plaintiff was beaten and subjected to excessive force in violation of his Eighth Amendment rights. *Second Amended Complaint* [#21], p. 9. Claim Two alleges that Plaintiff was placed in administrative segregation for seventeen days without notice in violation of his due process rights. *Id.* at 10. Claim Three alleges that CCA subjected Plaintiff to excessive force and brutality in violation of his Fourteenth Amendment rights. *Id.* at 11.

## III.   Analysis

This action is brought pursuant to 42 U.S.C. § 1983, which provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit at equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

### A.   Sovereign Immunity

Defendants contend that, insofar as WDOC, Harold Clark and James Thatcher are sued in their official capacities, summary judgment must be granted on the basis of

5

sovereign immunity.[4] *Motion* [#115], p. 13. The Complaint does not state whether Plaintiff sues these Defendants in their official or individual capacities. However, to the extent that Plaintiff attempts to sue Defendants in their official capacities, Eleventh Amendment immunity must be addressed.

The Eleventh Amendment bars suits in federal courts against non-consenting states by the state's own citizens or citizens of another state. *Port Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 304 (1990). Eleventh Amendment immunity "constitutes a bar to the exercise of federal subject matter jurisdiction." *Fent v. Okla. Water Res. Bd.*, 235 F.3d 553, 559 (10th Cir. 2000). Eleventh Amendment immunity applies to suits arising under 42 U.S.C. § 1983. *Quern v. Jordan*, 440 U.S. 332, 345 (1979).

Defendant WDOC, and Defendants Clark and Thatcher, as officials of the WDOC, are considered arms of the State of Washington for Eleventh Amendment purposes. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Consequently, the Eleventh Amendment bars suit against these Defendants in their official capacities for retroactive monetary relief. *White v. Colorado*, 82 F.3d 364, 366 (10th Cir. 1996). I find no disputed material facts concerning the application of sovereign immunity. Accordingly, I respectfully **RECOMMEND** that the Motion be **GRANTED** to the extent that it seeks summary judgment on the claims against Defendants WDOC, Clark and Thatcher in their official capacities for retroactive monetary relief, based on Eleventh Amendment immunity.

---

[4]As this argument challenges the Court's jurisdiction, I address it prior to addressing Defendants' other arguments.

## B. Personal Participation

Defendants assert that they are entitled to summary judgment on the claims against Crouse, Rogers, Clark and Thatcher, as Plaintiff has failed to allege that these Defendants personally participated in the alleged constitutional violations. *Motion* [#115], p. 7.

When a defendant is sued in his individual capacity, the Complaint must allege facts that show the defendant *personally participated* in the alleged violation. *Bennett v. Passic*, 545 F.2d 1260, 1262-63 (10th Cir. 1976) (emphasis added). Respondeat superior is not within the purview of 42 U.S.C. § 1983. *McKee v. Heggy*, 703 F.2d 479, 483 (10th Cir. 1983). Therefore, the Tenth Circuit has held that a supervisor cannot be held liable for his employees' actions based solely on his supervisory position. *Serna v. Colo. Dep't of Corr.*, 455 F.3d 1146, 1151 (10th Cir. 2006); *Jenkins v. Wood*, 81 F.3d 988, 994 (10th Cir. 1996). That is, "it is not enough for a plaintiff merely to show a defendant was in charge of other state actors who actually committed the violation. Instead, . . . the plaintiff must establish 'a deliberate, intentional act by the supervisor to violate constitutional rights.'" *Serna*, 455 F.3d at 1151 (citing *Jenkins*, 81 F.3d at 994-95). Further, the supervisor must be personally "involved in the constitutional violation," and a "sufficient causal connection" must exist between the supervisor and the constitutional violation. *Id.* (quoting *Rios v. City of Del Rio*, 444 F.3d 417, 425 (5th Cir. 2006)).

To establish supervisory liability in a § 1983 action, the plaintiff must first show that "the supervisor's subordinates violated the Constitution." *Id.* Second, the plaintiff "must show an 'affirmative link' between the supervisor and the violation, namely the active

7

participation or acquiescence of the supervisor in the constitutional violation by the subordinates." *Id.* In *Serna*, the Tenth Circuit held that:

> In this context, the supervisor's state of mind is a critical bridge between the conduct of a subordinate and his own behavior. Because 'mere negligence' is not enough to hold a supervisor liable under § 1983, a plaintiff must establish that the supervisor acted knowingly or with 'deliberate indifference' that a constitutional violation would occur. *Green v. Branson*, 108 F.3d 1296, 1302 (10th Cir. 1997); *see also Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999) ("Liability . . . cannot be based upon simple negligence.").

*Id.* at 1151-52.

### 1. First Claim for Relief

In his First Claim for Relief, Plaintiff alleges that his Eighth Amendment right to be free from cruel and unusual punishment was violated when, during the course of the riot, Plaintiff was "beaten, cuffed, kicked, dragged and left to lay in water and debris where [he] hypothermiated [sic] and nearly asphyxiated." *Second Amended Complaint* [#21], p. 9. Plaintiff must first establish an "affirmative link" between the Defendants and the alleged constitutional violation. *Serna,* 455 F.3d at 1151. Plaintiff does not appear to attempt to establish an affirmative link between Defendants' conduct and the alleged constitutional violation based upon their direct participation. Instead, Plaintiff appears to rely entirely on the argument that Defendants failed to adequately supervise or control the SORT team.

Defendant Crouse was the Warden at CCCF at the time of the riot. *Motion* [#115], p. 2. Plaintiff alleges that Defendant Crouse "supervised the Special Operations Response Team (SORT) who are the principal parties that inflicted the injuries." *Second Amended Complaint* [#21], p. 2. Defendant Rogers was the Assistant Warden at CCCF at the time

8

of the riot. *Motion* [#115], pgs. 2-3. Plaintiff previously alleged that "[a]s the leader of S.O.R.T., [Defendant] Rogers gave the order/s to drag [Plaintiff] through water, debris and tear gas smoke . . . . Because defendant Rogers actively participated in [the riot], the petitioner asserts that he should be held accountable for his actions . . . ." *Second Amended Complaint* [#21], p. 5. However, by letter filed with the Court dated March 1, 2007 [Docket No. 42], Plaintiff presented a "formal apology" to Defendant Rogers, and stated that he had "mis-identified [Defendant Rogers] as being the team commander for S.O.R.T." As such, Plaintiff appears to have abandoned his argument that Defendant Rogers personally participated in the riot, and instead seems to rely on the argument that Defendant Rogers is liable in his supervisory capacity. *See Response* [#132], p. 6 ("Defendant Rogers admits he has held a position of leadership in the S.O.R.T. Team . . . ."). Defendant Clark was Secretary of the Washington State Department of Corrections at the time of the riot. *Motion* [#115], p. 3. Plaintiff alleges that Defendant Clark "is the primary signatory on the contract that transfers Washington inmates to out of state facilities. [He] is ultimately responsible for the care and safety of all inmates within the Department of Corrections whom he authorizes to be transfered [sic] out of state." *Second Amended Complaint* [#21], p. 6. Defendant Thatcher worked for the Washington State Department of Corrections as Superintendent for out-of-state inmates at the time of the riot. *Motion* [#115], p. 3. Plaintiff alleges that Defendant Thatcher "was responsible for the care and well being of all Washington inmates at the this facility, having the vested power to intervene and correct or stop any identifiable rights deprivations and/or contract violations."

*Second Amended Complaint* [#21], p. 7.

Failure to supervise is only actionable under § 1983 against a defendant who had a duty to supervise. *See Meade v. Grubbs*, 841 F.2d 1512, 1528 (10th Cir. 1988) (finding that "[u]nless a supervisor has established or utilized an unconstitutional policy or custom, a plaintiff must show that the supervisory defendant breached a duty imposed by state or local law which caused the constitutional violation."). In order to survive a motion for summary judgment, Plaintiff here has the obligation to come forward with some evidence that would establish that Defendants failed to perform some supervisory duty. In *Serna*, the Tenth Circuit held that, "[i]n short, at the summary judgment stage, something more than conjectural allegations are necessary to establish direct participation by an official in the chain of command, whether the SORT team commander, the warden of the prison, or the director or prisoner." *Serna*, 455 F.3d at 1154. Plaintiff has not presented any such evidence. Like the situation in *Serna*, "nothing in the record suggests that [Defendants were] expected to supervise [the SORT team] either directly or indirectly . . . . And [Plaintiff] can point to nothing in record that would suggest [Defendants were] responsible for the training or planning of the operation at issue here." *Id.* Plaintiff has failed to present anything more than conjectural allegations related to Defendants' alleged failure to supervise the SORT team. Plaintiff has not established a genuine issue of material fact regarding whether Defendants failed to perform some supervisory duty.

Finally, Plaintiff must also establish that Defendants had a culpable state of mind, as "[l]iability of a supervisor under § 1983 must be predicated on the supervisor's deliberate

indifferance." *Serna*, 455 F.3d at 1154.  Deliberate indifference requires that the official "both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 1154-55 (citations omitted).  Plaintiff must therefore establish that Defendants knew that they were creating a situation that created a substantial risk of constitutional harm.  Defendants have pointed out that in his deposition, Plaintiff admitted that he has no evidence that Defendants were aware of any safety issues prior to the occurrence of the riot.  *Motion* [#115], Ex. A-1.  Plaintiff further admitted during his deposition that he has no evidence that he or any other prisoner communicated any possible safety issues to Defendants prior to the riot.  *Id.*  None of the presented evidence establishes that Defendants intended to harm Plaintiff or intended to create a situation that created a substantial risk of constitutional harm.  There are simply no disputed facts from which a jury could infer that Defendants were "aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists," and that they also drew this inference.  *Serna*, 455 F.3d at 1154-55 (citations omitted).

A plaintiff has an obligation to "present some evidence to support the allegations; mere allegations, without more, are insufficient to avoid summary judgment." *Lawmaster v. Ward,* 125 F.3d 1341, 1349 (10th Cir.1997).  The plaintiff must go beyond the pleadings and "designate specific facts so as to make a showing sufficient to establish the existence of an element essential to that party's case in order to survive summary judgment." *Sealock v. Colorado,* 218 F.3d 1205, 1209 (10th Cir. 2000) (citation omitted).

"Unsubstantiated allegations carry no probative weight in summary judgment proceedings." *Phillips v. Calhoun,* 956 F.2d 949, 951 n. 3 (10th Cir.1992). With respect to Plaintiff's First Claim for Relief regarding the July riot, there is simply no proffered evidence that Defendants Crouse, Rogers, Clark or Thatcher participated in the SORT action or were aware that a riot was going to occur. Plaintiff does not provide any evidence to link the named Defendants to the actions of the SORT team or any actions taken during the riot. Plaintiff has simply not demonstrated an "affirmative link" between the supervisor's conduct and the constitutional deprivation. *Serna*, 455 F.3d at 1151. I find no disputed material facts concerning the personal participation of these Defendants in the July 2004 riot. Accordingly, I respectfully **RECOMMEND** that the Motion be **GRANTED** insofar as it seeks summary judgment on Plaintiff's First Claim for Relief against Defendants Crouse, Rogers, Clark and Thatcher for failure to allege personal participation of these Defendants. As such, the Court declines to address Defendants' arguments related to qualified immunity.

### 2. Second Claim for Relief

Plaintiff's Second Claim for Relief alleges that he was "placed in Administrative Segregation for 17 days; . . . without being informed as to why [he] was segregated . . . . It is Plaintiff's belief that this segregating of his person was retaliation because of a grievance he filed against CCCF/CCA because of the brutal treatment inflicted by members of it's [sic] S.O.R.T. team." *Second Amended Complaint* [#21], p. 10. The allegations contained in Plaintiff's Second Claim for Relief appear to be brought solely against Defendants Crouse and Thatcher. Plaintiff alleges that Defendant Crouse "is responsible

for his being placed in administrative segregation 4 ½ months after the riot, without being told why he was segregated, without an infraction or rule violation report." *Id.* at 4. Plaintiff further alleges that Defendant Thatcher "failed to investigate Plaintiff's grievances regarding . . . his subsequent placement in administrative segregation . . . ." *Id.* at 7. Plaintiff alleges that Exhibits 2, 5, 6 and 7 support his Second Claim for Relief. *Id.* at 4. However, while Plaintiff did not file any exhibits attached to his Second Amended Complaint [Docket No. 21], Plaintiff's First Amended Complaint [Docket No. 6] was filed with seven exhibits. Accordingly, the Court has considered the exhibits attached to Plaintiff's First Amended Complaint in ruling on the Motion.

Pursuant to the law set forth in *Serna*, Plaintiff must demonstrate an affirmative link of either "active participation" or acquiescence by a supervisor in the constitutional violations of his subordinates. *Serna*, 455 F.3d at 1151. It is not entirely clear which "affirmative link" Plaintiff alleges, as he merely states that Defendant Crouse is "responsible for his being placed in administrative segregation . . . ." and that Defendant Thatcher "failed to investigate . . ." *Second Amended Complaint* [#21], pgs. 4, 7. If Plaintiff intended to allege that Defendants Crouse and Thatcher actively participated in the decision to place Plaintiff in administrative segregation, this allegation is not supported by Plaintiff's exhibits. The grievance documents which Plaintiff submitted to the Court with his First Amended Complaint, to the extent they are complete, reflect no involvement of Defendants Crouse or Thatcher in the alleged conduct. *See First Amended Complaint* [#6], Ex. 2, 5, 6, 7. Indeed, the recommendation that Plaintiff be placed in administrative segregation was

apparently submitted by Plaintiff's case manager, "E. Fish." *See Id.* at Ex. 7.

To the extent that Plaintiff alleges that the Defendants' acquiescence occurred through the formal grievance procedures, the Court can again find no evidence that Defendants Crouse or Thatcher participated in reviewing Plaintiff's grievances. Moreover, even were Plaintiff to present such proof, the "mere involvement of processing a grievance at an administrative level does not establish the affirmative link required to establish supervisor liability for an employee's conduct." *Boles v. Dansdill*, 2007 WL 2770473, *4 (D. Colo. Sept. 20, 2007) (unpublished decision) (citing *Johnson v. G.E.O./Lawton Corr. Facility*, 2005 WL 2739212 (W.D. Okla. Oct. 24, 2005)); *see also Coates v. Sheahan*, 1995 WL 430950, *2 (N.D. Ill. July 18, 1995) (unpublished decision) (holding that grievances submitted to a supervisory official are insufficient to establish the official's personal participation in a constitutional violation).

Finally, Plaintiff must also establish that Defendants had a culpable state of mind, as "[l]iability of a supervisor under § 1983 must be predicated on the supervisor's deliberate indifferance." *Serna*, 455 F.3d at 1154. As noted earlier, deliberate indifference requires that the official "both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 1154-55 (citations omitted). Plaintiff must therefore establish that Defendants knew that they were creating a situation that created a substantial risk of constitutional harm. None of the presented evidence establishes that Defendants intended to harm Plaintiff or intended to create a situation that created a substantial risk of constitutional harm. There are simply

no disputed facts from which a jury could infer that Defendants were "aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists," and that they also drew this inference. *Id.*

A plaintiff has an obligation to "present some evidence to support the allegations; mere allegations, without more, are insufficient to avoid summary judgment." *Lawmaster,* 125 F.3d at 1349. The plaintiff must go beyond the pleadings and "designate specific facts so as to make a showing sufficient to establish the existence of an element essential to that party's case in order to survive summary judgment." *Sealock,* 218 F.3d at 1209. "Unsubstantiated allegations carry no probative weight in summary judgment proceedings." *Phillips,* 956 F.2d at 951. With respect to Plaintiff's Second Claim for Relief regarding his placement in administrative segregation, there is simply no proffered evidence that goes beyond unsubstantiated allegations to establish that Defendants Crouse or Thatcher participated in the decision to place Plaintiff in administrative segregation or were aware that such a decision had been made. I find no disputed material facts concerning the personal participation of these Defendants. Accordingly, I respectfully **RECOMMEND** that the Motion be **GRANTED** insofar as it seeks summary judgment on Plaintiff's Second Claim for Relief against Defendants Crouse and Thatcher, for failure to allege personal participation of these Defendants.

### C. Municipal Liability

Plaintiff's Third Claim for Relief alleges that "[t]he physical abuse, injury and denial of medical attention for 13 hours during this [riot] clearly demonstrates that [Plaintiff] is a

15

victim of excessive force and brutality, coming within minutes of dying had it not been for the fast acting EMT response. The plaintiff charges that [sic] CCCF/CCA employees with willful neglect and disregard for his safety and obvious medical needs." *Second Amended Complaint* [#21], p. 11. Defendants argue that "Plaintiff fails to allege any facts that establish any liability on the part of Defendant CCA." *Motion* [#115], p. 11.

The established principles of municipal liability have been found to apply to §1983 claims brought against private corporations like Defendant CCA. *See, e.g., Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1216 (10th Cir. 2003) (finding that "[a]lthough the Supreme Court's interpretation of § 1983 in *Monell* applied to municipal governments and not to private entities acting under color of state law, case law from this and other circuits has extended the *Monell* doctrine to private § 1983 defendants."). Therefore, according to the principles of municipal liability, a private actor such as CCA "cannot be held liable *soley* because it employs a tortfeasor - or, in other words . . . cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978). In order to be held liable for the allegedly tortious acts of its agents, Plaintiff must show that CCA directly caused the constitutional violation by instituting an "official municipal policy of some nature," that was the "direct cause" or "moving force" behind the constitutional violations. *Smedley v. Corr. Corp. of Am.*, 175 Fed. Appx. 943, 944 (10th Cir. 2005) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480-85 (1986); *City of Oklahoma v. Tuttle*, 471 U.S. 808, 820 (1985)). "That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate

a direct causal link between the municipal action and the deprivation of federal rights." *Bd. of County Com'rs. v. Brown*, 520 U.S. 397, 404 (1997).

To impose liability, the alleged policy must be a "policy statement, ordinance, regulation or decision officially adopted and promulgated" by the public entity's officers. *Lankford v. City of Hobart*, 73 F.3d 283, 286 (10th Cir. 1996) (internal quotation marks and citation omitted). "If a violation cannot be characterized as official policy, then [a municipality may] still be held liable if the practice is so permanent and well-settled as to constitute a custom or usage with the force of law." *Id.* (internal quotation marks and citations omitted). A custom has been interpreted to mean "an act that, although not formally approved by an appropriate decision maker, has such widespread practice as to have the force of law." *Marshall v. Columbia Lea Reg'l Hosp.*, 345 F.3d 1157,1177 (10th Cir. 2003) (citation omitted).

Plaintiff does not identify a custom, policy or practice of CCA that is or can be related to the riot at CCCF or to his placement in administrative segregation. Indeed, Plaintiff's complaint is nearly devoid of any allegations against CCA whatsoever, aside from requesting that the Court find that CCA officials are "jointly and individually responsible for his injuries and rights violated during this incident . . . ." *Second Amended Complaint* [#21], p. 13. In his Response, Plaintiff states that "CCA & WDOC are responsible, both the Private for profit company and the Government agency signed the contract both share responsibility of [sic] my safety, security and welfare. Both assume responsibility to protect my Constitutional rights to be free from physical abuse while I am under their care. Both

17

have failed in their duties." *Response* [#132], p. 10.

Plaintiff's allegations regarding CCA are not an adequate basis for municipal liability. As there is no genuine issue of material fact regarding a violation of § 1983 by Defendant CCA, I respectfully **RECOMMEND** that the Motion be **GRANTED** inasmuch as it seeks summary judgment on Plaintiff's Third Claim for Relief against Defendant CCA.

## IV. Conclusion

As set forth above, I respectfully **RECOMMEND** that Defendants' Motion for Summary Judgment [Docket No. 115; filed January 22, 2008] be **GRANTED**.

FURTHER, IT IS **ORDERED** that pursuant to 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b), the parties have ten (10) days after service of this Recommendation to serve and file specific, written objections. A party's failure to serve and file specific, written objections waives *de novo* review of the Recommendation by the district judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. *In re Key Energy Resources Inc.*, 230 F.3d 1197, 1199-1200 (10th Cir. 2000). A party's objections to this Recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review. *United States v. One Parcel of Real Property*, 73 F.3d 1057, 1060 (10th Cir. 1996).

                                                BY THE COURT:
                                                __s/ Kristen L. Mix_____
                                                United States Magistrate Judge

Dated:       May 28, 2008